*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1059**

Eva B. Johnson,
Relator,

vs.

Viking Magazine Service, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 30, 2017
Affirmed
Halbrooks, Judge**

Department of Employment and Economic Development
File No. 34459455-3

Eva B. Johnson, Mounds View, Minnesota (pro se relator)

Viking Magazine Services, Inc., Burnsville, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Halbrooks, Judge; and

Rodenberg, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the unemployment-law judge's (ULJ) decision that she is ineligible for unemployment benefits, arguing that she quit because of her medical condition or for a good reason caused by her employer. We affirm.

**FACTS**

Relator Eva B. Johnson worked as a telemarketing sales representative for respondent Viking Magazine Service, Inc. for approximately five years. On February 12, 2016, Johnson was in a car accident and suffered headaches and blurred vision as a result. Johnson scheduled various medical appointments and submitted a request-for-time-off (RTO) form in order to attend them. But she filled out the RTO incorrectly. Instead of requesting that she have time off from 3:00 p.m. to 5:00 p.m. a few days per week, Johnson's form indicated that she could only work from 3:00 p.m. to 5:00 p.m. on those days. After seeing this form, J.H., the sales manager, asked Johnson, "Why don't you just not come in?" Johnson clarified her request, correctly filled out another RTO form, and Viking approved her request.

On February 29, 2016, Johnson submitted a letter of resignation to Viking stating several reasons for her decision: (1) her headaches and their interference with her job performance; (2) Viking's decision to start the workday at 8:30 a.m. instead of 9:00 a.m. and its adverse impact on her, given her reliance on public transportation; and (3) her discomfort working with another employee who had not repaid her $300 that he owed her.

2

Respondent Minnesota Department of Employment and Economic Development determined that Johnson is ineligible for unemployment benefits. Johnson appealed, contending that her injury made it necessary to quit and that J.H.'s comment constituted a good reason to quit. After an evidentiary hearing, a ULJ determined that Johnson is ineligible for unemployment benefits. Johnson filed a request for reconsideration. The ULJ affirmed its determination. This appeal follows.

## D E C I S I O N

A person who quits employment is ineligible for unemployment benefits unless she falls under a statutory exception to ineligibility. Minn. Stat. § 268.095, subd. 1 (2016). One exception is for an applicant whose serious illness or injury made it medically necessary to quit. *Id.*, subd. 1(7). This exception applies only if the applicant informs the employer of her medical problem, the applicant requests an accommodation, and the employer does not make a reasonable accommodation available. *Id.* Another statutory exception to ineligibility exists if a person quits employment based on a good reason caused by the employer. *Id.*, subd. 1(1). The ULJ found that neither exception applies to Johnson.

When reviewing a ULJ's determination of ineligibility, we may affirm the decision, remand the case for further proceedings, or reverse or modify the decision if the relator's substantial rights have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence in view of the record as a whole. Minn. Stat. § 268.105, subd. 7(d) (2016). "Whether a claimant is properly disqualified from the receipt of unemployment benefits is a question of law, which this court reviews de novo." *Hayes v. K-Mart Corp.*, 665 N.W.2d 550, 552 (Minn.

3

App. 2003), *review denied* (Minn. Sept. 24, 2003). We view the ULJ's factual findings in the light most favorable to the decision and will not disturb them when they are substantially sustained by the evidence. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).

Johnson contends that the ULJ erred by determining that she did not meet the medical-necessity exception to ineligibility. Although Johnson asked for time off to attend medical appointments, she never requested any accommodations at work, such as light duty. The ULJ determined the medical-necessity exception did not apply because the record does not establish that Johnson requested an accommodation and Viking granted Johnson's request for time off once she made that request clear. Viewing the facts in the light most favorable to the decision, we conclude that substantial evidence supports the ULJ's findings that Johnson did not request an accommodation and that her request for time off was granted. We therefore conclude that the medical-necessity exception does not apply.

Johnson also contends that the ULJ erred in determining that she did not meet the exception for employees who quit because of a good reason caused by their employer. Whether an employee quit for a good reason attributable to the employer is a legal conclusion, which this court reviews de novo. *Johnson v. Walch & Walch, Inc.*, 696 N.W.2d 799, 800 (Minn. App. 2005), *review denied* (Minn. July 19, 2005). A good reason is "a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the

4

employment." Minn. Stat. § 268.095, subd. 3(a) (2016). To meet this exception, "there must be some compulsion produced by extraneous and necessitous circumstances." *Werner v. Med. Prof'ls LLC*, 782 N.W.2d 840, 843 (Minn. App. 2010), *review denied* (Minn. Aug. 10, 2010). We use an objective standard of whether the reason would compel a reasonable worker to quit. *Id.*

Here, Johnson asserts that she quit because J.H. asked her, "Why don't you just not come in?" after he reviewed the RTO form that Johnson had incorrectly completed. J.H. admitted that he gave Johnson a "hard time" about incorrectly completing the form "in a joking sense." The ULJ determined that this was a misunderstanding that was later corrected and that a temporary misunderstanding is not a good reason to quit caused by the employer. The record indicates Johnson had been a good employee for Viking for nearly five years before she quit, and there is no indication of malice in J.H.'s question. These circumstances would not compel a reasonable worker to quit and become unemployed. We conclude that Johnson quit without good reason caused by the employer.

**Affirmed.**